NOT FOR PUBLICATION                              [Dkt. Ent. 11]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| ERIC PIGFORD; DARSELL PIGFORD, <br><br> Plaintiffs, <br><br> v. <br><br> RESIDENTIAL CREDIT SOLUTIONS, INC.; THE BANK OF NEW YORK MELLON CORP., <br><br> Defendants. | Civil No. 13-5703 (RMB/AMD) <br><br> **OPINION** |

**BUMB**, District Judge:

This matter comes before the Court upon a motion by Defendants Residential Credit Solutions ("RCS") and The Bank of New York Mellon Corporation ("BNY", with RCS, "Defendants") to dismiss a complaint filed by Eric and Darsell Pigford ("Plaintiffs"). The Complaint alleges causes of action for breach of the covenant of good faith and fair dealing, breach of contract, and violation of the Fair Debt Collection Practices Act ("FDCPA"). For the reasons set forth below, this Court will grant the motion to dismiss as to all claims, granting Plaintiffs twenty (20) days to seek leave to file an amended complaint.

I.  **BACKGROUND**

As alleged in the Complaint and associated exhibits, this matter stems from a mortgage Plaintiffs secured from Beazer Mortgage. (Compl. ¶ 9.) After being sold, the mortgage was ultimately serviced by Bank of America.[1] (Id.) Defendant BNY serves as the trustee of the certificate holders of the mortgage securitization trust. (Id. at Ex. H.) Plaintiffs allege they made all necessary mortgage payments until Plaintiff Eric Pigford lost his job.[2] (Id. at ¶ 10.) On January 24, 2013, Bank of America notified Plaintiffs by letter that they were eligible for the federal government's Home Affordable Unemployment Program, which provided them up to a six-month forbearance period during which they were not required to make any payments on their mortgage. (Id. at ¶ 11, Ex. A.) Under the terms of the Unemployment Program ("UP" or "forbearance agreement"), effective February 1, 2013, Plaintiffs' next mortgage payment would not be due until August 1, 2013, subject to several limitations. (Id. at Ex. A.) For instance, the description of the UP makes clear that "Forbearance means that you will not

---

[1] Previously, Bank of America was a defendant in this action. Bank of America was dismissed from the case due to Plaintiffs' failure to effectuate service. [Dkt. No. 29.] At no point has Bank of America been reinstated as a defendant. [Dkt. No. 38 (noting that Bank of America is no longer a party to the action).]

[2] Plaintiffs have not alleged the date upon which the mortgage was secured or Defendant Eric Pigford lost his job.

have to make your monthly payments of principal, interest and escrow amounts for the next 6 months unless one of the following conditions occurs: . . . You become re-employed . . . ." (Id.) After being admitted to the UP, Plaintiffs nevertheless continued to make mortgage payments in February, March, and April of 2013. (See Id. at Exs. B-D.)[3]

On April 22, 2013, Bank of America sent correspondence to Plaintiffs stating that "they were no longer eligible for the forbearance program because they were unable to reach the Plaintiffs by phone." (Id. at ¶ 13.) Plaintiffs allege that several days later they were orally notified that they were reinstated into the program by an employee of Bank of America. (Id.)

Plaintiff Eric Pigford subsequently procured new employment beginning May 20, 2013 and notified Bank of America on June 11, 2013 of that employment. (Id. at ¶ 14-15, Ex. E.) Shortly after this communication, on June 22, 2013, Defendant RCS sent a letter to Plaintiffs informing them that RCS had replaced Bank of America as the loan servicer. (Id. at ¶ 17, Ex. G.) On July 3, 2013, RCS, on behalf of BNY, mailed a letter to Plaintiffs stating that the loan was being placed in default for failure to

---

[3] It is unclear whether these payments, which are each for $3,000, are the monthly balance that would have been due were the loans not in forbearance.

make monthly mortgage payments from April 1, 2013 onward.  (Id.) at Ex. H.  The letter instructed that the sum of $15,146.98 must be paid on or before August 5, 2013.  (Id.)  Two days later, RCS mailed a letter to Plaintiffs indicating again that the loan was delinquent, and offering "solutions for customers who find themselves in difficult situations."  (Id. at Ex. I.)  On July 11, 2013, Plaintiffs made a mortgage payment in the amount of $4,400 to RCS.  (Id. at Ex. J.)  On July 19, 2013, RCS sent a second Notice of Default.  (Id. at Ex. K.)  Finally, on September 9, 2013, RCS sent a Pre-Foreclosure Notice to the Plaintiffs requesting Plaintiffs to contact them as soon as possible.  (Id. Ex. N.)

   Plaintiffs filed suit in this Court on September 25, 2013 against Defendants.  The Complaint alleges that Defendants breached the terms of the forbearance agreement (including the covenant of good faith and fair dealing) and committed a violation of the Fair Debt Collection Practices act.  [Dkt. No. 1.]  On May 15, 2014, Defendants filed the instant motion.  [Dkt. No. 11.]  A period of inactivity followed, caused by Plaintiffs' counsels' failure to appear for a hearing and failure to respond to two Orders to Show Cause entered by this Court directing Plaintiffs' counsel to explain her failure to

appear or respond to the Defendants' filings.[4]  [Dkt. Nos. 29, 32, 33.]  After a subsequent sixty-day administrative termination, this motion was reinstated on September 4, 2015. [Dkt. No. 44.]

## II.  STANDARD OF REVIEW

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 662.  "[A]n unadorned, the defendant-unlawfully-harmed-me accusation" does not suffice to survive a motion to dismiss.  Id. at 678.  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a

---

[4] A third such Order to Show Cause directed Plaintiffs' counsel to pay a $100 per day fine until she responded.  Plaintiffs' counsel professed in her certification that the very next day after that Order was entered—apparently by chance—a colleague of Plaintiffs' happened to check the docket for her case and noticed her failure to respond to the Court's Orders.  [Dkt. No. 34.]  Plaintiffs' counsel claimed that she had become unable to receive electronic notifications from this Court due to a "secretarial error" in the entry of her contact information, although this had not prevented her from receiving prior notifications.  She did not appear at the June 26, 2015 hearing, despite the fact the date of the hearing had been set down via teleconference in which she participated.  [Dkt. No. 29.]

formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

In reviewing a plaintiff's allegations, the district court "must accept as true all well-pled factual allegations as well as all reasonable inferences that can be drawn from them, and construe those allegations in the light most favorable to the plaintiff." Bistrian v. Levi, 696 F.3d 352, 358 n.1 (3d Cir. 2012). Only the allegations in the complaint, and "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case" are taken into consideration. Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citing Chester Cnty. Intermediate Unit v. Penn. Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990)).

### III. ANALYSIS

#### A. Standing Under Home Affordable Unemployment Program

Defendants first contend that all of Plaintiffs' claims are barred because they arise pursuant to the Home Affordable Unemployment Program—a federal program similar to the Home Affordable Modification Program ("HAMP"), which does not afford a private right of action. (Defs.' Br. at 5-8.) Plaintiffs argue that while HAMP does not permit a cause of action, neither HAMP, nor Home Employment Unemployment Program precludes a

6

litigant from bringing causes of action pursuant to state law on a forbearance agreement like the UP.  (Pls.' Br. at 3.)

Both parties are correct that, in a broad sense, HAMP itself does not permit a cause of action.  See, e.g., Nelson v. Bank of Am., N.A., 446 F. App'x 158, 159 (11th Cir. 2011) ("We agree with those courts and with the district court in the present case, that nothing express or implied in HAMP gives borrowers a private right of action."); Sinclair v. Citi Mortg., Inc., 519 F. App'x 737, 738 (3d Cir. 2013) ("HAMP does not provide a private right of action.").  Nevertheless, the issue of Defendants' compliance with HAMP is not before the Court.  Instead, the Court must determine whether a contractual forbearance agreement (the UP) entered into by the parties permits a private right of action for breach of that agreement.

The cases Defendants cite for the proposition that causes of action based upon the modification process "have been uniformly rejected by the Federal District Courts" are distinguishable.  (Defs.' Br. at 6.)  Again looking to HAMP, Defendants cite a series of cases that hold that claims that are not independent of HAMP should be dismissed.  See, e.g., Slimm v. Bank of America, Civ. No. 12-5846 (NLH/JS), 2013 WL 1867035, at *13 (D.N.J. May 2, 2013) (New Jersey Consumer Fraud Act claim not sufficiently independent of HAMP, and "since there is no private right of action under HAMP, Plaintiffs' claim should be

7

dismissed for failure to state a claim upon which relief can be granted"); Poppelreiter v. GMAC Mortg., LLC, No. 1:11CV008-A-S, 2011 WL 6100440, at *1 n.2, *4 (N.D. Miss. Dec. 7, 2011) (citing to the government's website, the Court notes that MHAP includes HAMP, among other programs, and ultimately holds that HAMP does not create a private right of action.)  These cases all include allegations that the defendants either delayed consideration of, or rejected, the plaintiffs' HAMP application, or otherwise failed to comply with their HAMP obligations as set forth in the agreement between the lenders and the federal government.[5]

In contrast, courts in this District have held that not all state law claims are precluded by HAMP.  Rather, only those state law claims that challenge a defendant's compliance with

---

[5] For instance in Slimm, the District of New Jersey held that a claim under the New Jersey Consumer Fraud Act that was premised entirely on unlawful and deceptive practices with regard to mortgage modifications should be dismissed because it was "directly related to Defendants' obligations under HAMP." Slimm, 2013 WL 1867035, at *13.  Here, Plaintiffs allege that Defendants entered into a contractual forbearance agreement and then broke the terms of that agreement, not that Defendants somehow failed to meet their governmentally-imposed obligations under HAMP or Home Affordable Unemployment Program.  Even more off-point, in Poppelreiter, while the Court reached the merits of all of the Plaintiffs' claims, it noted that "to the extent any portion of Plaintiffs' claims rest upon GMAC's failure to provide them with a HAMP modification, Plaintiffs have failed to produce, and the Court has been unable to locate, any record evidence that the Plaintiffs were entitled to a HAMP modification . . . Furthermore, although the issue has yet to be addressed by the Fifth Circuit, a majority of courts have held that HAMP does not create a private cause of action." Poppelreiter, 2011 WL 6100440, at *4.

8

its obligations under HAMP are precluded.  See, e.g., Giordano v. Saxon Mortg. Servs., Inc., Civ. A. No. 12-7937, 2014 WL 4897190, at *4 (D.N.J. Sept. 30, 2014) ("Unlike the original Complaint, the Amended Complaint is based on independent state law claims centering on Defendant's alleged breach of the [Trial Period Plan], not a breach of the HAMP statute, its guidelines, or the HAMP Servicer Participation Agreement.")[6]  Thus, even if this case were to concern HAMP generally—which it does not— Plaintiffs' state law causes of action, which focus on

---

[6] While the Third Circuit, in a non-precedential opinion, has noted that HAMP does not provide a private right of action, Sinclair v. Citi Mortg. Inc., 519 F. App'x 737, 739 (3d Cir. 2013), recent decisions referencing that opinion have not construed that statement as precluding a plaintiff from pursuing a claim under state law.  Lia v. Wells Fargo Bank, Civ. A. No. 14-0752, 2014 WL 2739348, at *2 (D.N.J. June 17, 201) ("Wells Fargo begins by arguing that both counts should be dismissed because they constitute an impermissible end run around a federal law called Home Affordable Modification Program ('HAMP'), which apparently governs the loan modification sought by Plaintiffs, and which lacks a private right of action. In support of this argument, Wells Fargo cites an unpublished Third Circuit decision, Sinclair v. Citi Mortg. Inc., No. 12-4261, 2013 WL 1010617 (3d Cir. Mar.15, 2013). Sinclair is neither binding nor on-point. Sinclair held only that that HAMP lacks a private right of action. It did not hold that HAMP in any way precludes state law causes of action. On the other hand, in Wigod v. Wells Fargo Bank, 673 F.3d 547, 581–85 (7th Cir. 2012), a published decision that is on-point, the Seventh Circuit explicitly rejected Wells Fargo's 'impermissible end run' argument. The Court finds Wigod to be persuasive."); Cave v. Saxon Mortg. Servs, Inc., 2013 WL 1915660, at *4 n.3 (E.D. Pa. May 9, 2013) ("At oral argument, Saxon also noted that HAMP does not provide for a private right of action. Plaintiffs, however, have not brought a claim under HAMP, but rather are trying to enforce the terms of the TPP. In these circumstances, it is inconsequential that HAMP affords no private right of action.").

Defendants' obligations under a contractual forbearance agreement with Plaintiffs, are not barred.  Accordingly, Defendants' motion to dismiss Plaintiffs' claims as barred by Home Affordable Unemployment Program is denied.

**B. Contract Claims**

Defendants argue that, even if the claims are not precluded, Plaintiffs' claims for breach of the covenant of good faith and fair dealing and breach of contract should be dismissed for a host of reasons.

"It is well-established that the essential elements of a cause of action for a breach of contract are a valid contract, defective performance by the defendant, and resulting damages. Where the terms of a contract are clear and unambiguous, there is no room for interpretation or construction and courts must enforce those terms as written." Spano v. JP Morgan Chase Bank, NA, 521 F. App'x 66, 70 (3d Cir. 2013) (internal quotation marks and citations omitted).  Regarding the covenant of good faith and fair dealing, such covenant "is implied in every contract in New Jersey[.]" Grygorcewicz v. Schweitzer-Mauduit Intern., Inc., Civ. A. No. 08-cv-4370(FLW), 2009 WL 235623, at *2 (D.N.J. Jan. 30, 2009) (citation omitted).  "This implicit duty ensures neither party to a contract shall injure the right of the other to receive the fruits of the agreement." Id. (citation omitted).

10

Defendants' arguments in favor of dismissal of the contract claims are numerous. (Defs.' Br 8-11.) Defendants argue first that Plaintiff has failed to allege the existence of a contract between Defendants and Plaintiffs because the purported contract is just a program description. (See Compl. Ex. A.) Second, Defendants next argue that even if a contract did exist, that contract was terminated by Bank of America on April 22, 2013, and any subsequent reinstatement was required to be in writing. Third, Defendants argue that Plaintiffs have not alleged that the contract between Bank of America and Plaintiffs binds Defendants. Finally, even if a valid, enforceable contract did exist, Defendants argue that their conduct did not violate the forbearance agreement because their obligations under that agreement ended when Plaintiff Eric Pigford became re-employed. For purposes of resolving the instant motion, this Court focuses on the two most salient issues: the termination of Plaintiffs' participation in the forbearance program by Bank of America and the termination of Defendants' obligations under the forbearance agreement once Plaintiff Eric Pigford obtained a new job.

i. **Plaintiffs' Allegations Establish that they were Disqualified from the Program**

This Court has concerns with regard to whether a letter noting that Plaintiff has been approved for a forbearance program, but nevertheless containing instructions for Plaintiffs

11

should they wish <u>not</u> to participate in the program, suffices to demonstrate a written contract.  (Compl. Ex. A); N.J.S.A. § 25:1-5(g).[7]  Nevertheless, even assuming for the sake of argument that Exhibit A and the corresponding allegations establish a contract between Plaintiffs and Bank of America, the allegations also concede that Plaintiffs were disqualified from the program and orally reinstated.  (Compl. ¶ 13.)

Defendants argue that forbearance agreements must be in writing, and thus, this oral reinstatement was not a valid, enforceable contract from which a breach of contract or breach of the covenant of good faith and fair dealing can flow.  (Defs.' Br. at 10.)  Indeed, pursuant to New Jersey Statute, "No action shall be brought upon any of the following agreements or promises, unless the agreement or promise upon which such action be brought or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or by some other person thereunto by him lawfully authorized: . . . An agreement by creditor to forbear from exercising remedies pursuant to a contract, promise, undertaking or commitment [subject to N.J. Stat. Ann. § 25:1-5(f).]"  N.J. Stat § 25:1-

---

[7] Plaintiffs make only a fleeting effort to demonstrate that the forbearance agreement entered into between Bank of America and Plaintiffs is a valid, enforceable contract, focusing entirely on how consideration is alleged, but ignoring Defendants' arguments concerning the sufficiency of the document.  (Pls.' Br. at 4.)

12

5(g). Plaintiffs do not provide any rebuttal to this argument in their response papers and this Court has identified no reason why Plaintiffs' Complaint, which concedes they were removed from the forbearance program, can establish they were parties to a binding contract upon joining it a second time orally.

Accordingly, because the allegations as they currently stand indicate that Plaintiffs were not party to a binding forbearance agreement the second time around, no action can be brought upon that agreement. As such, Counts I and II against Defendants must be dismissed.[8]

### ii. Plaintiffs have not alleged that Defendants' Conduct Violated the Forbearance Agreement

Defendants argue that a second, fatal flaw in Plaintiffs' allegations is that any obligation not to place Plaintiffs in default ended when Plaintiff Eric Pigford became re-employed. While Plaintiffs allege that they "were granted a six (6) month forbearance period during which they were not required to make any payments on their mortgage," the term of the purported forbearance agreement, as attached to the Complaint, is more nuanced than that. (See Compl. Ex. A.) The purported contract

---

[8] Because Plaintiffs have conceded that some facts establishing the validity of their contract are "not neatly pled," the Court will dismiss causes of action I and II without prejudice to seeking leave to amend the Complaint to contain allegations which more clearly lay out a valid, enforceable contract with Defendants. Plaintiffs shall have twenty (20) days to so seek an amendment.

13

also notes that "If you become re-employed before August 01, 2013 you must update us . . . ." (Id.) It goes on to state that the terms of the forbearance dictate that Plaintiff will not have to make "monthly payments of principal, interest and escrow amounts unless . . . you become re-employed . . . ." (Id.) Plaintiff Eric Pigford's June 11, 2013 communication to Bank of America on this subject thus ended Bank of America's obligations under the forbearance agreement, to the extent those were assumed by Defendants.[9] As a result, assuming Defendants were obligated not to place Plaintiffs' home in default by the forbearance agreement between Plaintiffs and Bank of America, that obligation concluded prior to any of Defendants' allegedly breaching conduct.[10] In the Complaint, Plaintiffs do not appear to allege that any breach occurred until July 3, 2013, when

---

[9] Plaintiff has not alleged that RCS, as successive servicer, is bound by the contract entered into by Bank of America.

[10] Plaintiffs' allegation that Defendants orally agreed to assume the obligations of the forbearance agreement on July 11, 2013 do not change this Court's view. Initially, the allegation itself appears to state that Defendants would agree to assume the obligations under the forbearance agreement pending documentation outlining the original agreement being sent to them, which Plaintiffs have not alleged they did. (Compl. ¶ 21.) Further, as noted above, New Jersey law requires that all mortgage forbearance agreements be made in writing. N.J.S.A. § 25:1-5(g). Plaintiffs have not alleged that such an agreement was made in writing.

14

Defendants mailed a letter notifying Plaintiffs of their default and Defendants' intention to foreclose.[11]

Instead, Plaintiffs argue in their response to the motion that "Defendants misread Plaintiffs['] exhibits, which clearly show that Defendants had placed Plaintiffs in default as of April 1, 2013, <u>before</u> Plaintiff Eric Pigford became employed." (Pls.' Br. at 4.) While such conduct, if alleged, might have violated the terms of the forbearance agreement, the Complaint's factual allegations fall far short of that argument. The July 3, 2013 Notice of Default and Intention to Foreclose states merely that "[t]he loan is in default for the failure to make the monthly mortgage payments from 04/01/2013 to the present." (Compl. Ex. A.) This language does not show that Defendants placed the loan in default on April 1, 2013, it simply explains the reason the loan was placed in default by noting that payment had not been made since that date. Indeed, the opening sentence of the notice appears to indicate the loan was placed in default by the letter itself, dated July 12, 2013. (Compl. Ex. H ("You are hereby notified that you are in default under the terms and conditions of the Note/Bond and Mortgage executed by you in the principal amount of $500,000.").) Moreover, given RCS did not

---

[11] Plaintiffs also fail to allege in a non-conclusory fashion that any conduct was malicious or in bad faith for purposes of breach of the covenant of good faith and fair dealing.

15

assume the role of servicer of the loan until June 22, 2013, it does not seem as though it could have placed the loan in default on April 1, 2013.[12]

In light of the above, the allegations in the Complaint, taken in the light most favorable to Plaintiffs, do not show any conduct violating the terms of the purported forbearance agreement.[13] Accordingly, the Court finds that Plaintiffs have not stated causes of action for violation of the covenant of good faith and fair dealing (Cause of Action I) and breach of contract (Cause of Action II). Accordingly, even if this Court is incorrect regarding Plaintiffs' reinstatement into the Unemployment Program, Plaintiffs have nevertheless failed to state claims because Defendants' obligations under the UP, to the extent Bank of America's obligations can be attributed to

---

[12] As Defendants rightly point out, this April 1, 2013 date of the alleged breach appears practically nowhere in the Complaint and did not appear to assume any significance until Plaintiffs filed their response to the instant motion.

[13] Moreover, even if this Court is incorrect in holding that Defendants owed no obligations under the forbearance agreement, this Court would nevertheless hold that Defendants' conduct did not violate the terms of the purported forbearance agreement. The document Plaintiffs hold out as commemorating their agreement with Bank of America explicitly states that foreclosure notices may be mailed to Plaintiffs despite the forbearance agreement. (See Compl. Ex. A.) Thus, this conduct would not breach the explicit terms of the agreement. Plaintiffs also fail to allege that it would amount to bad faith or unfair dealing.

Defendants, terminated when Plaintiff Eric Pigford became re-employed.

### C. **FDCPA Claim**

Defendants also argue that Plaintiffs' FDCPA claim against them should be dismissed because sending pre-foreclosure notices are not "prohibited practices" under the FDCPA and Defendant BNY is not a debt collector. "The FDCPA provides a remedy for consumers who have been subjected to abusive, deceptive or unfair debt collection practices by debt collectors." Piper v. Portnoff Law Associates, Ltd., 396 F.3d 227, 232 (3d Cir. 2005). "In order to successfully bring a claim under the Act, a plaintiff must show that: (1) the defendant is a 'debt collector', and (2) the defendant debt collector engaged in prohibited practices in an attempt to collect a debt." Slimm, 2013 WL 1867035, at *4. Under the FDCPA, prohibited practices include "the use of violence, obscenity, and profane language; repeated annoying phone calls; and false representations about 'the character, amount, or legal status of any debt.'" Id. at 22 (citations omitted).

Plaintiffs' cause of action grounds itself on the fact that Defendants were prevented from sending the pre-foreclosure notices by the forbearance agreement. However, as discussed above, Plaintiffs have failed to sufficiently allege that at the time the pre-foreclosure notices were sent a valid agreement

17

existed between Defendants and Plaintiffs.  Moreover, because these pre-foreclosure notices were sent after June 11, 2013, when Plaintiff Eric Pigford informed Bank of America that he had been re-employed, they were not prohibited under the terms of the forbearance agreement.  Plaintiffs' bald allegation that "Defendants RCS and BNY falsely represented the character, amount and legal status of Plaintiffs' debt" does not assist Plaintiffs in meeting the pleading threshold either.  Such an allegation is a legal conclusion, and is unsupported by factual assertions.[14]

Accordingly, Plaintiffs have failed to allege that Defendants engaged in prohibited practices.  Moreover, Plaintiffs have not shown that Defendant BNY was a debt collector for purposes of the FDCPA.  Accordingly, Defendants'

---

[14] The Court also notes that Defendants have argued, and Plaintiffs have failed to respond, that Defendant BNY is not a debt collector subject to the FDCPA because it is a creditor collecting its own debt.  See 15 U.S.C. § 1692(a)(6) (defining debt collector as any person who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another" (emphasis added)).  Although not entirely clear in case law, courts have suggested that, provided the debt is not in default when acquired by a creditor, assignees of an obligation are not debt collectors subject to the FDCPA.  See, e.g., FTC v. Check Investors, Inc., 502 F.3d 159, 172 (3d Cir. 2007) ("Courts have indicated that an assignee of an obligation is not a 'debt collector' if the obligation is not in default at the time of assignment[.]").  Plaintiffs have not alleged when Defendant BNY acquired the debt obligation or the status of the loan at the time it was acquired.

18

motion to dismiss with regard to Plaintiffs' third and final cause of action is GRANTED without prejudice.

## IV. CONCLUSION

For the reasons outlined above, Defendants' motion to dismiss is GRANTED as to all causes of action.  The grant of this motion is made without prejudice to Plaintiffs seeking leave to file an amended complaint remedying the above-described deficiencies within twenty (20) days of the filing of the Order which accompanies this Opinion.


DATED:  November 19, 2015

s/Renée Marie Bumb
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE
